CRIMINAL COMPLAINT
(Electronically Submitted)

| United States District Court | DISTRICT of ARIZONA |
|---|---|
| United States of America<br>v.<br>**Pedro Salcedo-Jimenez**<br>DOB: 1993; United States Citizen<br>**Jose Raul Molinares-Estrada**<br>DOB: 1957; Mexican States Citizen | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br><br>**22-02858MJ** |

Complaint for violation of Title 18, United States Code, Section 554(a)

**COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:**

On or about October 5, 2021, in the District of Arizona, PEDRO SALCEDO-JIMENEZ and JOSE RAUL MOLINARES-ESTRADA knowingly and fraudulently attempted to export and send from the United States any merchandise, article, or object contrary to any law or regulation of the United States, and received, concealed, bought, sold, and in any manner facilitated the transportation, concealment, and sale of such merchandise, article or object, that is: 10,000 rounds of .223 caliber ammunition; knowing the same to be intended for exportation contrary to any law or regulation of the United States, to wit: Title 50, United States Code, Section 4819, and Title 15, Code of Federal Regulations, Parts 736.2, 738, and 774; in violation of Title 18, United States Code, Section 554(a).

**BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:**

In January of 2022, agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) learned that Pedro SALCEDO-Jimenez purchased approximately 50,000 to 60,000 rounds of 7.62x39mm caliber ammunition within a one-month period in Tempe, Arizona. ATF provided this information to Homeland Security Investigations (HSI) agents, who learned that SALCEDO had crossed the International Border between the United States and Mexico on multiple occasions in December of 2021 and January of 2022, coinciding with the dates SALCEDO made the ammunition purchases. SALCEDO had crossed as the passenger of a red Chevrolet Aveo with Mexican license plates, with Jose Raul MOLINARES-Estrada as the driver.

On February 1, 2022, HSI agents learned that MOLINARES had entered the United States driving the Aveo and SALCEDO had entered separately on foot. Agents conducted surveillance and observed the Aveo travel to Tempe, where they observed SALCEDO purchase bulk ammunition at the same location he made his previous ammunition purchases. Following the purchases, SALCEDO and MOLINARES traveled straight to Nogales, Arizona, in the Aveo and approached the Port of Entry. Approximately fifty yards north of the Port of Entry, the Aveo made a U-turn and proceeded to a self-storage facility. HSI agents stopped the vehicle and approached MOLINARES (the driver) and SALCEDO (the passenger).

(continued on next page)

MATERIAL WITNESSES IN RELATION TO THE CHARGE: N/A

| DETENTION REQUESTED<br>Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge.<br><br>**ANGELA WOOLRIDGE** Digitally signed by ANGELA WOOLRIDGE<br>Date: 2022.02.02 04:36:28 -07'00'<br>AUTHORIZED AUSA *Angela W. Woolridge* | SIGNATURE OF COMPLAINANT<br><br>OFFICIAL TITLE<br>~~HSI Special Agent~~ Jesus A. Castillo<br>TASK FORCE OFFICER |
|---|---|
| Sworn by telephone _x_<br>SIGNATURE OF MAGISTRATE JUDGE *Leslie A. Bowman*<br>25313 | DATE<br>February 2, 2022 |

[1] See Federal rules of Criminal Procedure Rules 3, 4.1, and 54

(continued from previous page)

After being advised of and waiving their *Miranda* rights, both MOLINARES and SALCEDO admitted they knew the ammunition they purchased and transported was destined for Mexico, and that they did not have a license to export ammunition. MOLINARES stated that he was hired by SALCEDO to drive from Nogales to the Phoenix area for the purpose of purchasing ammunition. They then planned to provide the ammunition to another individual in Nogales, Arizona. MOLINARES believed it was logical to assume this individual would take the ammunition into Mexico. MOLINARES expected to receive $1,500 for his role in transporting the ammunition.

SALCEDO stated he was contacted by an associate in Mexico to purchase ammunition and transport it to Nogales, Arizona, in exchange for $1,000. The associate instructed SALCEDO on the amount and caliber of ammunition to purchase. SALCEDO believed the ammunition would eventually be taken into Mexico. SALCEDO admitted he was aware that exporting ammunition into Mexico was illegal.

The ammunition SALCEDO and MOLINARES purchased and transported with the intent to export into Mexico is classified as United States Commerce Control List items, which are prohibited for exportation into the Republic of Mexico without an export license. Neither SALCEDO, MOLINARES, nor any other individual involved in the smuggling activity had a license or other lawful authority to export the ammunition from the United States into Mexico.